NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JACKSON HEWITT INC., a Virginia corporation, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 06-CV-909 (DMC) |
| | : | |
| RONALD G. CHILDRESS, an individual, | : | |
| | : | |
| Defendant. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Plaintiff Jackson Hewitt Inc. ("JHI") on the First and Third Counts of its Verified Complaint ("Complaint"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's motion for summary judgment is **granted**.

## I.    BACKGROUND[1]

This case arises out of two franchise agreements between JHI and Ronald G. Childress ("Defendant"), dated September 17, 2001 (collectively "Franchise Agreements"). The Franchise Agreements permitted Defendant to operate tax return preparation businesses in various territories in the State of Alabama using JHI's trade names and trademarks ("Jackson Hewitt Marks") and JHI's proprietary business methods and software. The Franchise Agreements had

---

[1] The facts set forth in this Opinion are taken from the facts set forth in the parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

terms ranging from ten to fifteen years. After just four years, however, Defendant unilaterally terminated the Franchise Agreements by ceasing to operate the tax return preparation businesses that he was required to operate.

Upon termination of the Franchise Agreements, Defendant was obligated to comply with various covenants, including a covenant not to compete and additional covenants related to JHI's confidential and proprietary information. Defendant breached the covenant not to compete by engaging in the operation of a competing tax return preparation business in the same building in which he formerly operated his Jackson Hewitt franchise. In addition, Defendant has failed to return JHI's trade secrets and confidential and proprietary information. In the meantime, Defendant has been utilizing these trade secrets and confidential and proprietary information for Defendant's pecuniary gain.

### A.  **The Parties**

JHI is a Virginia corporation with its principal place of business in Parsippany, New Jersey. JHI operates a tax preparation franchise system comprised of trade names and trademarks, as well as JHI's proprietary business methods and software. Through its franchise system, JHI markets, promotes and provides services to its tax return prepartion franchisees throughout the United States.

Defendant is a citizen of the State of Alabama. Defendant operates a tax return preparation business under the name of "Childress Accounting" at 2417 Mastin Lake Road, Huntsville, Alabama, the site of his former Jackson Hewitt franchise.

B.     **The Franchise Agreements**

The Parties entered into the Franchise Agreements for the license and operation of tax return preparation businesses within two defined geographic territories in the State of Alabama. The territories, delineated by zip code, are designated as Territories AL021 and AL024 (collectively the "Territories"). Each territory was governed by a separate, but substantially similar, Franchise Agreement ("AL021 Agreement" and "AL024 Agreement"). Effective as of the date of the franchise Agreements, JHI and Defendant entered into a Franchise Agreement Addendum to the AL021 Agreement ("AL021 Addendum") which supplemented the AL021 Agreement by adding section 29 to modify specific sections of the AL021 Agreement. Under the terms of the Franchise Agreements, Defendant received the exclusive right, subject to certain terms and conditions, to operate tax return preparation businesses and a license to use the Jackson Hewitt Marks, as well as JHI's proprietary business methods and software.

The Franchise Agreements governed Defendant's business operations in the Territories. Pursuant to section 29.1 of the AL021 Agreement, the AL021 Agreement modified section 2.1 to a fifteen-year term. Pursuant to section 2.1 of the AL024 Agreement, the AL024 Agreement had a ten-year term. Pursuant to section 12.3.1, Defendant agreed that, *inter alia*, the identities of the customers served by Defendant's Jackson Hewitt franchise and customer lists are JHI's "trade secrets, confidential and proprietary information." Pursuant to section 29.3 of the AL021 Agreement, which supplemented section 12.3.1, the definition of "customer lists" and related information includes "the list and information of [Childress'] customers for the two (2) Tax Seasons prior to execution of the Franchise Agreement." Pursuant to section 12.3.2, Defendant agreed that the unauthorized use or disclosure of these trade secrets and confidential and

3

proprietary information would cause irreparable harm to JHI and that damages are an insufficient remedy. Pursuant to section 12.4, Defendant also acknowledged JHI's right to contact and serve all JHI customers from Defendant's former Territories following the termination of the Franchise Agreements.

Pursuant to section 18.2 of the Franchise Agreements, Defendant agreed that, for a period of twenty-four months after the effective date of termination, he would not "directly or indirectly prepare or electronically file individual tax returns, teach tax courses, offer Bank Products, or own, engage in, operate, [or] manage . . . a Competing Tax Business . . . within the Territor[ies] or within an area ten (10) miles outside the boundaries of the Territor[ies]." Moreover, pursuant to section 18.5, Defendant agreed that he would not disclose any of JHI's trade secrets, as defined in section 12.3 of the Franchise Agreements. Defendant also expressly acknowledged in section 18.6 that JHI is entitled to preliminary and permanent injunctive relief in the event of Defendant's violation of the covenants in section 18, in addition to payment of all financial gains realized by Defendant from his breach. Moreover, in section 18.7 of the Franchise Agreements, Defendant recognized that the covenant not to compete was reasonable and necessary to protect JHI and its franchise system and that the restrictions would not impose any undue hardship on Defendant. Defendant also agreed in section 18.8 that he would not raise as a defense to these covenants any claim that he might have against JHI.

Pursuant to section 20.1, Defendant was entitled to terminate the Franchise Agreements under specific circumstances. Even a proper termination by Defendant, however, would not relieve him of his obligations under the Franchise Agreements. In the event of any termination of

4

the Franchise Agreements, whether by JHI or by Defendant, section 20.3 required to comply with post-termination obligations. In addition, in section 28.14 of the Franchise Agreements, Defendant acknowledged JHI's right to obtain injunctive relief to enforce Defendant's post-termination obligations. Notwithstanding the post-termination covenant not to compete, however, with respect to Territory AL021, section 29.7 of the Franchise Agreement entitled Defendant to continue providing certain non-competitive accounting and bookkeeping services. The Franchise Agreements also contain several provisions which bar Defendant's claim that he relied on any alleged pre-contractual representations made by JHI.

     **C.**    **Defendant's Abandonment and Resulting Termination of the Franchise Agreements**

On or about October 6, 2005, Defendant attempted to terminate the Franchise Agreements. Defendant indicated that he intended to close the office for twenty-four hours after which he planned to re-open as "Childress Accounting." On or about October 26, 2005, Defendant reiterated his intentions to cease his Jackson Hewitt franchise as of November 15, 2005 and Defendant advised JHI that he had no intention to comply with certain post-termination obligations. On or about December 12, 2005, JHI inspected Defendant's Jackson Hewitt franchise, which confirmed that Defendant abandoned his Jackson Hewitt franchise and instead was operating a competing tax return preparation business at that location under the name of Childress Accounting. By letter dated December 19, 2005, JHI advised Defendant that his attempted termination was improper and that, in any case, a termination by him would not relieve him of his obligations under the Franchise Agreements. On or about January 12, 2006, JHI again inspected Defendant's Jackson Hewitt franchise location to confirm that Defendant was

operating a competing tax return preparation business under the name of "Childress Accounting" at that location. This resulted in Defendant's unilateral termination of the Franchise Agreements.

### D. Defendant's Post-Termination Obligations

Since terminating the Franchise Agreements on or about November 15, 2005, Defendant has failed to comply with his post-termination obligations. On or about September 4, 2007, JHI again inspected Defendant's Jackson Hewitt franchise location to confirm that Defendant continued to operate a competing tax return preparation business. Defendant has also failed to return JHI's trade secrets and confidential and proprietary information. Finally, Defendant has failed to notify the telephone company, or transfer to JHI, all listing agencies and advertizing directories for the Territories that he no longer has the right to use the telephone numbers and listings used for his Jackson Hewitt franchise business.

### E. The Current Action

On March 1, 2006, JHI filed the Complaint and an application for an Order to Show Cause Without Temporary Restraints and a preliminary injunction. This Court entered the Order to Show Cause Without Temporary Restraints. Then, on March 3, 2006, Defendant filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy") in the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court"). Defendant's bankruptcy petition included the rejection of the Franchise Agreements. Defendant failed, however, to list his claim against JHI and this action in his petition. On March 16, 2006, this Court entered the Order of Administrative Termination, which administratively terminated this action pending the outcome of the Bankruptcy. On June 8, 2006,

the Bankruptcy Court entered an order granting Defendant a Chapter 7 discharge. On December 4, 2006, this Court entered an Order of Reinstatement, reopening this matter so that JHI could proceed with its claims against Defendant. On February 14, 2007, Defendant filed an Answer and, notwithstanding his failure to disclose any claim against JHI in his Bankruptcy, a Counterclaim alleging that JHI fraudulently induced him to enter into the Franchise Agreements through pre-contractual misrepresentations.

The terms of the covenant not to compete prohibit Defendant from operating a competing tax return service. Pursuant to section 18.2 of the Franchise Agreements, Defendant agreed that, for a period of twenty-four months after his effective termination date, he would not "directly or indirectly prepare or electronically file individual tax returns, teach tax courses, offer Bank Products, or own, engage in, operate, [or] manage . . . a Competing Tax Business . . . within the Territor[ies]." Defendant voluntarily ceased operating the businesses in 2005. Pursuant to the terms of the Franchise Agreements, Defendant's failure to operate the tax preparation businesses resulted in a unilateral termination of the Franchise Agreements, thereby triggering Defendant's post-termination obligations, with which he has refused to comply. Therefore, summary judgment is appropriate because the post-termination obligations are valid and enforceable as a matter of law and Defendant cannot dispute his failure to comply with the said obligations.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P.

56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  <u>See</u> <u>id.</u>  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  <u>Id.</u> The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. <u>See</u> F<small>ED</small>. R. C<small>IV</small>. P. 56(e); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  <u>Schoch v. First Fid. Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990).  "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party."  <u>Newsome v. Admin. Office of the Courts of the State of N.J.</u>, 103 F. Supp.2d 807, 815 (D.N.J. 2000), <u>aff'd</u>, 51 Fed. Appx. 76 (3d Cir. 2002) (citing <u>Watts v. Univ. of Del.</u>, 622 F.2d 47, 50 (D.N.J. 1980)).

If the non-movant fails to oppose the motion for summary judgment, F<small>ED</small>. R. C<small>IV</small>. P. 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." <u>See, e.g.</u>, <u>Anchorage Assoc. v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir.1990); <u>see also</u> <u>Damiano v. Sony Music Entm't.</u>, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed and, thus, no genuine issue of material fact was created). The motion is appropriately granted when that party is entitled to judgment as a matter of law. <u>See</u> <u>Anchorage Assoc.</u>, 922 F.2d at 175. When "the non-

8

moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. IRS, 2002 U.S. Dist. LEXIS 2921, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assoc., 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, Civ. Action No. 87-5149, 1989 U.S. Dist. LEXIS 1876, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. City of Phila., 2000 U.S. Dist. LEXIS 8500, 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000).

This Court is cognizant of the leniency given to *pro se* litigants. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Albinson, 356 F.3d 278 (3d Cir. 2004). Here, Defendant is a *pro se* litigant. Defendant filed his motion for summary judgment on October 12, 2007. Accordingly, under L. CIV. R. 78.1, Defendant's opposition to Plaintiff's motion for summary judgment was due by October 30, 2007, but Defendant instead failed to file his opposition until November 13, 2007. In the interest of justice, however, this Court considered Defendant's papers as if timely filed.

## III.   DISCUSSION

The law is clear – and leaves little room for doubt – regarding covenants not to compete. A covenant not to compete is a common provision in a contract for the sale of a business in which the seller agrees not to compete in the same business for a period of years or in a

geographic area. A covenant not to compete is a term used in contract law under which one party (usually an employee) agrees to not pursue a similar profession or trade in competition against another party (usually the employer). Covenants not to compete are bound by traditional contract requirements, including the consideration doctrine. The use of such clauses is premised on the possibility that, upon an employee or franchisee's termination or resignation, the employee/franchisee might begin working for a competitor or starting a business, thereby gaining competitive advantage by abusing intimate knowledge of the employer's operations to release trade secrets or sensitive information. Potential concerns include client lists, business practices, upcoming products and marketing plans. Conversely, a business might abuse a covenant not to compete to prevent an employee from working completely. Most courts have deemed covenants not to compete to be legally binding so long as the clause contains reasonable limitations regarding the relevant geographical area and time period.

Defendant's premature termination of the Franchise Agreements and material breach of his post-termination obligations are undisputed. Accordingly, there is no question of fact regarding Defendant's liability and, thus, JHI is entitled to summary judgment on liability. Additionally, as a matter of law, JHI is entitled to an order enjoining Defendant from violating his post-termination obligations under the Franchise Agreements. Furthermore, JHI is entitled to summary judgment on Defendant's Counterclaim, which alleges that JHI fraudulently induced him to enter into the Franchise Agreements through pre-contractual misrepresentations. The Counterclaim ignores the integration clause and disclaimer provisions in the Franchise Agreements which bar Defendant's claims.

A.    <u>Liability for Counts One and Three of the Complaint</u>[2]

New Jersey law governs the claims asserted by JHI in the Complaint by virtue of, *inter alia*, the choice of law provision in section 28.1 of the Franchise Agreements. Under New Jersey law, if the terms of a contract are unambiguous, a court may construe the meaning or requirements of a contract as a matter of law for purposes of summary judgment. See <u>W.B. v. Matula</u>, 67 F.3d 484, 497 (3d Cir. 1995); <u>Nevets C.M. Inc. v. Nissho Iwai Am. Corp.</u>, 726 F. Supp. 525, 531 (D.N.J. 1989). Where the terms of a contract are ambiguous, the interpretation of the Parties' intent is a question of fact. See <u>Ram Const. Co. v. Am. States Ins. Co.</u>, 749 F.2d 1049, 1051 (3d Cir. 1984). The initial determination of whether a contract is clear or ambiguous is a preliminary question of law for the Court. See <u>Aerospace & Agric. Implement Workers v. Mack Trucks, Inc.</u>, 917 F.2d 107, 111 (3d Cir. 1990).

Under New Jersey law, a covenant not to compete is valid and enforceable. Although New Jersey courts have not squarely analyzed covenants not to compete in the franchise context, they have analyzed covenants not to compete in the contexts of employment contracts and the sale of a business. New Jersey courts have distinguished covenants not to compete in those contexts and have given more latitude to those ancillary to the sale of a business. The Supreme Court of New Jersey stated that "a seller's incidental noncompetitive covenant, which is designed to protect the good will of the business for the buyer, is freely enforceable in the courts." <u>Solari Industries, Inc. v. Malady</u>, 55 N.J. 571, 576 (1970). Similarly, in <u>Coskey's T.V. & Radio Sales v. Foti</u>, the court stated that "[c]ovenants ancillary to the sale of a business are accorded far more

---

[2] JHI has agreed that, in the event that this Court grants JHI's motion for summary judgment in its entirety as to Counts One and Three of the Complaint, JHI will dismiss Counts Two, Four, Five, Six and Seven.

latitude" than those ancillary to an employment contract." 253 N.J. Super. 626, 633-34 (App.

Div. 1992). <u>Foti</u> further articulated that:

> Restrictive covenants ancillary to an employment contract are different and far more complex. Our courts have only enforced such contracts insofar as they are reasonable under the circumstances. <u>Solari</u> is the seminal case establishing the modern New Jersey enforceability standards concerning covenant not to complete in the employment setting. It established a three-prong test of reasonableness. To be enforceable the covenant must protect a legitimate interest of the employer; it may impose no undue hardship on the employee; and it must not impair the public interest. Even if the covenant is found enforceable, it may be limited in its application concerning its geographical area, its period of enforceability, and its scope of activity.

<u>Id.</u> (internal citations omitted). Because covenants not to compete in Franchise Agreements are

similar to those that are ancillary to the sale of a business, they must be treated similarly.

In the current case, while the covenant not to compete arises in the context of a franchise

relationship, it is similar to a covenant not to compete ancillary to the sale of a business. Hence,

the covenant not to compete must be freely enforced. In <u>Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.</u>,

this Court concluded that "covenants not to compete in franchise agreements are closer to

agreements ancillary to the sale of a business." 834 F. Supp. 683, 691 (D.N.J. 1993). The <u>Jiffy</u>

<u>Lube</u> Court reasoned that "[t]he franchisee and franchisor are in a more equitable bargaining

situation than the typical employer-employee relationship." 834 F. Supp. at 691. Moreover, the

Court indicated that a franchise is similar to the sale of a business because in both circumstances,

good will is conveyed. <u>See id.</u> In a franchise relationship, the Court noted, the franchisor's good

will is conveyed through the franchise agreement. <u>See id.</u> Unlike the sale of a business, however,

once the franchise relationship terminates, the good will is conveyed back to the franchiser. <u>See</u>

12

id. Thus, the Jiffy Lube Court concluded that a "restrictive covenant, reasonably crafted, is necessary to protect the good will after that reconveyance." Id. Because covenants not to compete in franchise agreements are similar to those that are ancillary to the sale of a business, they must be freely enforced and afforded additional latitude.

The covenant not to compete must be afforded more latitude than one found in an employment contract, but it nevertheless withstands the scrutiny given to restrictive covenants in employment contracts. "Solari is the seminal case establishing the modern New Jersey enforceability standards concerning [a] covenant not to compete [sic] in the employment setting. It established a three-prong test of reasonableness." Foti, 253 N.J. Super. at 634-35. A covenant not to compete in an employment contract "will generally be found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." Solari Industries, Inc., 55 N.J. at 576. Thus, JHI's covenant not to compete passes the Solari test.

First, the covenant not to compete protects the legitimate interests of the employer. New Jersey law recognizes that "legitimate interests" include the protection of trade secrets, confidential information and customer relationships. See, e.g., Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 33 (1971); A.T. Hudson & Co. v. Donovan, 216 N.J. Super. 426, 433 (App. Div. 1987). The Jiffy Lube Court supported its holding that the legitimate interest prong was satisfied by reasoning that Jiffy Lube had a valid interest in protecting the good will it developed in the area and in placing a new franchisee in that area. See 834 F. Supp. at 691. Here, JHI also has a valid interest in protecting its good will. Defendant acknowledged that JHI's customer relationships,

13

trade secrets and confidential and proprietary information are critical to JHI. Defendant was the exclusive provider of tax return preparation services within the Territories and, therefore, was in a position to develop and maintain exclusive relationships with JHI's customers. The crux of the covenant not to compete is to provide JHI with an opportunity to transfer former franchisees' customers, such as Defendant, to alternative JHI franchisees upon the termination of franchise agreements and, thereby, preserve JHI's client base. Defendant was also privy to confidential and proprietary information regarding JHI's business methods and customers. Therefore, Defendant contractually acknowledged and reasonably anticipated – the permanent injunctive relief that JHI now seeks.

Second, JHI's covenant not to compete imposes no undue hardship on Defendant. In section 18.7 of the Franchise Agreements, Defendant expressly acknowledged that the restrictions contained in the covenant not to compete in section 18 were reasonable and necessary to protect JHI and its franchise system and the restrictions would not impose any undue hardship on Defendant. Moreover, the restrictive covenant is reasonable because it imposes only a two-year time restriction and a ten-mile radius geographical restriction with respect to the Territories. See, e.g., A.T. Hudson, 216 N.J. Super. at 426; Transamerican Trucking Serv., Inc. v. Ruane, 273 N.J. Super. 130 (App. Div. 1994). Thus, Defendant will not be exposed to undue hardship.

Finally, JHI's covenant not to compete is not injurious to the public. In Jiff Lube, this Court found that the public interest would not be impacted by the inability of the community members to have their cars lubricated by the defendant in the protected area. See 834 F. Supp. at 693. Here, the same is true. There are undoubtedly ample tax return preparation businesses in the

area. Moreover, even if the protected area spanned beyond the ten mile protected area here, the community members could still easily access Defendant's services. Therefore, there would be no injury to the public interest.

Defendant is violating the covenant not to compete because he has openly refused to comply with the said obligations. In Defendant's October 6, 2006 letter to JHI, Defendant advised JHI that he intended to close his JHI office for twenty-four hours, after which he would re-open as Childress Accounting. In Defendant's October 26, 2005 letter to JHI, Defendant reiterated his intention to abandon the JHI franchise. In accordance with Defendant's written intentions, he abandoned the JHI franchise on or about November 15, 2005 and reopened Childress Accounting at the same location. JHI has conformed that Defendant continues to operate a Competing Tax Business, Childress Accounting, in the same office in which he formerly operated his Jackson Hewitt franchise in JHI Territory AL021 in Huntsville, Alabama. Pursuant to section 18.6, Defendant expressly acknowledged that JHI is entitled to permanent injunctive relief in the event of Defendant's violation of the covenants in section 18.2. Therefore, JHI's motion for summary judgment from liability for Count One of the Complaint must be granted.

Defendant is violating the covenants relating to JHI's confidential and proprietary information. Beyond the covenant not to compete, terminating the Franchise Agreements triggered other post-termination obligations with which Defendant has failed to comply. In the event of termination of the Franchise Agreements, whether by JHI or by Defendant, section 20.3 required Defendant to comply with, *inter alia*, post-terminations obligations:

> [R]eturn to [JHI] without retaining any copies, the originals and all copies of all trade secret, confidential and proprietary materials as defined in paragraph 12.3 and provide access to [JHI] or [JHI's] designee to remove all copies of any such items from your offices, hard drive and to delete them from any other computer data storage media.

(SMF ¶ 23(i).) Section 12.3 further defined the term "confidential information." Pursuant to that section, Defendant agreed that, *inter alia*, the identities of the customers served by the franchised business, copies of tax returns and customer lists are JHI's "trade secrets, confidential and proprietary information." (SMF ¶ 12.) Pursuant to section 29.3 of the AL021 Agreement, the definition of customer lists and related information includes "the list and information of [Childress's] customers for the two tax seasons prior to execution of the Franchise Agreement." (SMF ¶ 13.) Defendant further agreed that the unauthorized use or disclosure of these trade secrets would cause irreparable harm to JHI and that damages are an inadequate remedy. Notwithstanding Defendant's express contractual obligations, Defendant has refused to turn-over JHI's confidential and proprietary information.

Furthermore, section 20.3 required Defendant to (1) comply with the post-termination covenant not to compete contained in section 18 of the Franchise Agreement; and (2) notify the telephone company and all listing agencies and advertizing directories for the Territories that he no longer retains the right to use the telephone numbers and listings used for his JHI business and authorize the transfer of same to JHI. Defendant has not complied with these unambiguous obligations. Defendant's breach of his post-termination obligations cannot be disputed. Therefore, JHI is entitled to summary judgment from liability for Count Three of its Complaint.

**B.**     **JHI's Claim for Injunctive Relief**

JHI seeks injunctive relief due to Defendant's undeniable failure to comply with the covenant not to compete and his other post-termination obligations relating to JHI's confidential and proprietary information. Despite Defendant's discharge in Bankruptcy, these covenants are effective and enforceable "because the very purpose of the covenant[s] is to govern the relationship between the parties after the demise of the underlying contract." Sir Speedy, Inc. v. Morse, 256 B.R. 657, 660 (D. Mass. 2000).

**1.**     **Defendant Must be Enjoined from Violating the Covenant not to Compete and the Covenants Relating to JHI's Confidential and Proprietary Information**

JHI is entitled to a permanent injunction enjoining Defendant from violating the Franchise Agreements' covenant not to compete and requiring him to comply with his obligation to return JHI's confidential and proprietary information. In Sheppard v. Twp. of Frankford, the Court identified factors that should be weighed in determining whether to grant injunctive relief:

> Those factors are (1) the character of the interest to be protected; (2) the relative adequacy of the injunction to the plaintiff as compared with other remedies; (3) the unreasonable delay in bringing suit; (4) any related misconduct by plaintiff; (5) the comparison of hardship to plaintiff if relief is denied,  and hardship to defendant if relief is granted; (6) the interests of others, including the public; and (7) the practicality of framing the order or judgment.

261 N.J. Super. 5, 10 (App. Div. 1992). The Sheppard Court further indicated that "[t]o the extent the factors are present, the judicial process is to weigh and balance each factor in a qualitative rather than quantitative manner." Id.

17

In the current case, weighing the relevant factors reveals that injunctive relief is appropriate. JHI has a legitimate interest in protecting its customer relationships, good will, trade secrets and confidential and proprietary information. Injunctive relief is JHI's sole remedy for Defendant's violation of the covenant not to compete and his obligation to return JHI's trade secrets and confidential and proprietary information because JHI's claims for damages were discharged in Bankruptcy. On March 1, 2006, JHI filed a Complaint in this matter along with an application for an Order to Show Cause Without Temporary Restraints and a preliminary injunction. On March 1, 2006, the Court entered the Order to Show Cause Without Temporary Restraints. On March 3, 2006, however, Defendant filed a voluntary petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code. Therefore, on March 16, 2006, this Court entered the Order of Administrative Termination, thereby administratively terminating this action pending the Bankruptcy's outcome, which led to the reasonable delay of JHI's suit. On June 8, 2006, the Bankruptcy Court entered an Order granting Defendant a Chapter 7 discharge. On December 4, 2006, this Court entered an Order of Reinstatement to reopen this matter so that JHI could proceed with its claims against Defendant. Thus, in the absence of injunctive relief, JHI will have no relief from Defendant's breach of his post-termination obligations.

Injunctive relief is necessary to protect JHI. Defendant agreed that the unauthorized use or disclosure of JHI's trade secrets and confidential and proprietary information would cause irreparable harm to JHI and that damages are not an adequate remedy. In section 18.7 of the Franchise Agreements, Defendant acknowledged that the covenant not to compete was reasonable and necessary to protect JHI and its franchise system and that the restrictions would

not impose any undue hardship on Defendant. Additionally, the public interest would not be harmed by enforcing the covenant not to compete, nor would it be harmed by enforcing Defendant's obligation to return JHI's trade secrets and confidential and proprietary information. Finally, an order or judgment can be practically framed because the terms of the covenant not to compete and the covenants relating to JHI's trade secrets and confidential and proprietary information are precise and capable of being set-forth in an order or judgment. Therefore, injunctive relief is warranted.

> **2.** **JHI is Entitled to Injunctive Relief for a Period of Twenty-Four Months Beginning from the Date of Defendant's Compliance**

JHI is entitled to injunctive relief for a period of twenty-four months beginning from the date of Defendant's compliance with the covenant not to compete. JHI's covenant not to compete was triggered after Defendant abandoned the franchise on or about November 15, 2005. Defendant frustrated JHI's ability to obtain injunctive relief earlier by filing for bankruptcy, so JHI has no other remedies available. Thus, equity requires Defendant to comply with the covenant not to compete for a period of twenty-four months beginning from the date of his compliance with the said covenant.

In Community Hospital Group, Inc. v. More, the Supreme Court of New Jersey did not extend the period of a restrictive covenant even though it had expired during the time of litigation. See 183 N.J. 36, 63 (2005). The Court stated that it found "no justification to extend the agreement beyond that period" and the Court noted that the plaintiff could "press its claim for damages for the period." Id. Here, a narrow reading of section 18.2 of the Franchise Agreements would suggest that Defendant's covenant not to compete expires on or about November 15,

2007. Such a narrow interpretation, however, would be inequitable because, unlike in <u>More</u>, there are significant justifications for extending the period of the covenant not to compete.

JHI, unlike the plaintiff in <u>More</u>, has no alternative remedy. The Bankruptcy, resulting in Defendant's discharge, precluded JHI from collecting damages from Defendant. Thus, injunctive relief is JHI's sole remedy. If JHI is precluded from injunctive relief due to the expiration of the restricted period during the course of litigation. Defendant will wrongfully benefit from his refusal to comply with his contractual obligations. <u>See, e.g.</u>, <u>Roanoke Enginnering Sales Co., Inc. v. Rosenbaum</u>, 233 Va. 548 (1982).

The facts in the current case are analogous to the facts in <u>Roanoke</u>. Defendant has violated the covenant not to compete, delayed litigation by filing for bankruptcy and stripped JHI of its claims for damages through bankruptcy. An injunction is JHI's sole remedy. Thus, an injunction prohibiting Defendant from competing with JHI for twenty-four months beginning when Defendant ceases to compete against JHI is warranted. Thus, JHI is entitled to summary judgment on its request for injunctive relief as a matter of law.

### C.   <u>JHI is Entiteled to Summary Judgment Dismissing Defendant's Counterclaim Because the Franchise Agreements Contained an Integration Clause</u>

Defendant alleges that JHI fraudulently induced him to enter into the Franchise Agreements. In order to state a claim for fraud in the inducement, Defendant must demonstrate that: "A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." <u>See</u> <u>Jewish Center of Sussex County v. Whale</u>, 86 N.J. 619, 624 (1981) (citing <u>Foont-Freedenfeld v.</u>

Electro-Protective, 126 N.J. Super. 254, 257 (App. Div. 1973)).

Defendants' counterclaim turns on the issue of reliance. In light of the integration clause and disclaimers contained in the Franchise Agreements, Defendant's alleged reliance on any prior representations not contained in the Franchise Agreements was unreasonable as a matter of law. See Ramada Franchise Sys., Inc. v. Eagle Hosp. Group, Civ. Action No. 03-3585, 2005 WL 1490975, *8-*9 (D.N.J. June 23, 2005).

The Franchise Agreement contains an integration clause, which provides that the Franchise Agreement is "the entire understanding and agreement between the parties and supersedes all earlier and contemporaneous representations, understand, oral and written agreements about us, all of the subject matters in this [Franchise] Agreement, and the Franchised Business" and "no salesperson has made any promise or provided any information to you about projected sales, revenues, income profits or expenses from the Assigned Area except as stated in Item 19 of the Uniform Franchise Offering Circular or in a writing that is attached to this [Franchise] Agreement." (SMF ¶ 26, 29.) Moreover, "[JHI] and [JHI's] agents have not made any warranty, or guaranty, express or implied, as to potential volume, profit, income, or the likely success of your franchise, or as to the quality of software, advertising, support, the Operating System, the business contemplated by this [Franchise] Agreement, or any other matter." (SMF ¶ 27.) Defendant acknowledged that he read the Franchise Agreements, acknowledged the business risks involved and signed the Franchise Agreements. Many courts have recognized that misrepresentations are not actionable if an integration clause is contained in the franchise agreement governing the parties' relationship. See, e.g., Hotels of Key Largo, Inc. v. RHI Hotels,

21

Inc., 694 So.2d 74, 76 (Fla. App. Ct. 1997); Rosenberg, 718 F. Supp. at 1152; see also Am.'s

Favorite Chicken Co. v. Cajun Enter., Inc., 130 F.3d 180, 186 (5th Cir. 1997). Thus, Defendant's

Counterclaim is frivolous.

## IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's motion for summary

judgment is **granted**.  An appropriate Order accompanies this Opinion.


                                            S/   Dennis M. Cavanaugh
                                           Dennis M. Cavanaugh, U.S.D.J.


Date:          January 15, 2008
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File

22